**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GURDIT SINGH, <br> A-226-136-633, <br><br>           Petitioner, <br><br>     v. <br><br> CHRISTOPHER CHESNUT, et. al., <br><br>           Respondents. | No.  1:26-CV-00273-WBS-DMC-HC <br><br> <u>FINDINGS AND RECOMMENDATIONS</u> |

Petitioner, an immigration detainee proceeding with retained counsel, brings this petition for a writ of habeas corpus under 28 U.S.C. § 2241. Pending before the Court is Petitioner's petition for writ of habeas corpus. <u>See</u> ECF No. 1.  Respondents filed an answer. <u>See</u> ECF No. 7. Petitioner filed a traverse. <u>See</u> ECF No. 9.

**I. BACKGROUND**

A.     **<u>Procedural History</u>**

On January 13, 2026, Petitioner filed the instant petition for writ of habeas corpus, ECF No. 1, together with a motion for temporary restraining order, ECF No. 3. The District Judge denied the motion for temporary restraining order, finding Petitioner "failed to demonstrate the existence of irreparable harm" because Petitioner delayed in filing the motion and "Petitioner's

1

untimely filing is fatal to his motion for temporary restraining order. That petitioner leaves this delay 'unexplained' only bolsters this conclusion." ECF No. 4, pgs. 2-3.

**B.      Petition for Writ of Habeas Corpus**

Petitioner asserts that on September 16, 2024, he was released from Customs and Border Patrol (CPB) custody. See ECF No. 1, pg. 1. According to Petitioner, he was "released on his own recognizance . . . [and] served with a form I-862, Notice to Appear [{NTA)] in Removal Proceedings which was filed with an immigration court." Id. at 16. Petitioner contends that after he was released, he "filed an application for asylum with EOIR, Immigration Court [and] petitioned Special Immigrant Juvenile Status (SIJ) on Aug 1, 2025 which is currently pending before the [U.S. Citizenship and Immigration Services,] USCIS." Id. Petitioner alleges that his NTA "does not indicate that Petitioner is an 'arriving alien.' . . . [i]nstead, the NTA indicates Petitioner is a person present in the United States who has not been admitted or paroled." Id. at 17. Petitioner contends he has not violated the terms of his release and "has no criminal history." Id. According to Petitioner, despite his compliance with those terms, Petitioner was detained on October 30, 2025. Id. at 1.

Petitioner next provides a detailed history of Department of Homeland Security (DHS) "scope of expedited removal," id. at 10-12, "coordinated effort to dismiss removal proceedings to facilitate expanded use of expedited removal," id. at 12-14, and the Board of Immigration Appeals (BIA) recent decision which "blesses novel and expanded use of detention to all persons present without having been inspected," id. at 14-16. Petitioner asserts four claims for relief, alleging a violation of Petitioner's (1) substantive due process rights pursuant to the Fifth Amendment; (2) procedural due process rights pursuant to the Fifth Amendment; (3) Forth Amendment rights (unlawful arrest); (4) and a violation of the Administrative Procedure Act. See id. at 17-21. As to relief, Petitioner requests immediate release, that Respondents be enjoined from re-detaining Petitioner absent a custody redetermination hearing before a neutral decisionmaker where the government proves by clear and convincing evidence that Petitioner is a flight risk or danger to the community, and order that Petitioner cannot be re-detained, absent a change in circumstances. Id. at 22.

**C.    Answer**

Respondents filed an answer to the petition, asserting that Petitioner is an applicant for admission detained pursuant to 8 U.S.C. § 1225(b)(2). See ECF No. 7, pgs. 1-3. Respondents argue that "applicants for admission do not enjoy the same set of procedural and substantive due process protections afforded to individuals lawfully in the United States." Id. at 2 (citing Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139 (2020). Respondents assert that "'applicants for admission have virtually no constitutional rights regarding their applications.'" Id. (quoting Valencia v. Mukasey, 548 F.3d 1261, 1263 (9th Cir. 2008)). According to Respondents, the only inquiry when an applicant for admission raises a due process claim is 'whether the government violated the statutory rights that Congress afforded such applicants.'" Id. (quoting Grigoryan v. Barr, 959 F.3d 1233, 1241 (9th Cir. 2020). Respondents contend that Petitioner "is subject to mandatory detention under statutory and constitutional law." Id. at 3.

**D.    Petitioner's Traverse**

In his traverse, Petitioner maintains that he was released pursuant to § 1226(a)(2)(B) and argues that Respondents

> do not explain as far as counsel can discern, how Petitioner who was previously arrested under 1226(a), and released under § 1226(a)(2)(B) ('own recognizance' or conditional parole) could have been detained under 1225 either at the time of arrival (because, amongst other reasons, 1225 does not allow for release on own recognizance) or now (because there is no apparent mechanism where a person who has been arrested and released under 1226(a) could later, without leaving the country, be subject to 1225(b)(2)).

ECF No. 9, pg. 2

Next, Petitioner contends that even if Petitioner could have been detained pursuant to 1225(b)(2) when he was initially detained in 2024,

> the fact that he was instead arrested under 1226(a), which was after all the Respondents practice at that time. [sic] and then released under § 1226(a)(2)(B), means that respondents cannot now simply take back their decision without violating the due process clause. Applying their new policy and interpretation to undo a prior release and to compromise Petitioner's settled liberty interest is impermissibly retroactive in effect and violates Petitioner's right to due process.

Id.

///

3

Thus, Petitioner asserts that in order to re-detain Petitioner in accordance with due process, Respondents must provide a pre-deprivation hearing where Respondents must provide Petitioner "is a danger or flight risk or otherwise must be detained for a *permissible purpose*." Id. (emphasis in original).

## II. DISCUSSION

The undersigned finds that Petitioner has a protectable liberty interest in remaining out of custody and he was deprived of this liberty without due process when re-detained without notice or a hearing.  Accordingly, the undersigned will recommend granting Petitioner's petition for writ of habeas corpus as to Petitioner's due process claims and order Petitioner immediately released from Respondents' custody under the same conditions he was released previously. Given this recommendation, the undersigned finds it is not necessary to consider Petitioner's remaining claims.

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. Hernandez v. Session, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. Id. at 693–94. Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). The Court considers each step in turn.

/ / /

/ / /

4

**A.**     **Liberty Interest**

As for the first step, the undersigned finds Petitioner has shown he has a protectable liberty interest because § 1226 governs Petitioner's release as evidenced by the fact that Petitioner's release was pursuant to Section 236 which is codified by § 1226 and such release created a reasonable expectation of continued liberty, absent a change in circumstances.

1.     Petitioner's Release was Pursuant to § 236, Codified by § 1226

The undersigned finds Respondents' argument that Petitioner cannot assert a liberty interest because he is an "applicant for admission" under § 1225 and therefore subject to mandatory detention, unpersuasive. The facts support finding that § 1226 governs Petitioner's prior release.

According to Petitioner's Order of Release on Recognizance, Petitioner was released on September 15, 2024, pursuant to Section 236 of the INA, ECF No. 3-1, pg. 12, which is codified by § 1226. Indeed, Respondents make no factual argument nor showing that Petitioner is subject to § 1225, aside from the general assertion that Petitioner "is an applicant for admission to the United States." ECF No. 7, pg. 3. Respondents were instructed to "include with the answer/return any and all transcripts or other documents relevant to the determination of the issues presented in the application," ECF No. 5, but Respondents did not provide any such documents. Thus, Respondents provide no evidence nor factual basis for finding that Petitioner is subject to § 1225.

Petitioner provides Petitioner's Order of Release on Recognizance, ECF No. 3-1, pg. 12, and Respondents do not challenge the authenticity of that document. Petitioner's Order of Release on Recognizance provides that Petitioner was released "[i]n accordance with section 236 of the Immigration and Nationality Act [INA] and the applicable provisions of Title 8 of the Code of Federal Regulations . . ." ECF No. 3-1, pg. 12. Section 236 is codified by § 1226 and therefore, Petitioner's release pursuant to Section 236 demonstrates that Petitioner was previously determined to be subject to § 1226. See e.g. Martinez v. Hyde, 792 F. Supp. 3d 211, 215 (D. Mass. 2025) (finding § 1226 governs Petitioner's release because Petitioner's release was "in accordance with section 236," and discretionary release under § 1225 is only available for "for

urgent humanitarian reasons or significant public benefit," whereas release on recognizance is "a form of 'conditional parole'"); Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 485–86 (S.D.N.Y. 2025)(finding Petitioner's prior release was "pursuant to Respondents' discretionary authority under § 1226" because the warrant for Petitioner's subsequent arrest was "pursuant to 'section 236 of the Immigration and Nationality Act'—i.e., § 1226").

Thus, the factual record shows that Respondents previously determined that § 1226 governed Petitioner's release and the undersigned therefore finds Petitioner remains subject to § 1226.

2.    Petitioner has a protected entitlement

Respondents argue that Petitioner is not entitled to constitutional due process, citing a number of Supreme Court and Ninth Circuit cases in support. To begin, the undersigned finds that Respondents' reliance on Grigoryan is misplaced.[1] Respondents contends that Grigoryan supports their claim that "the only inquiry when an applicant for admission raises a due process claim is 'whether the government violated the statutory rights that Congress afforded such applicants.'" ECF No. 7, pg. 2 (quoting Grigoryan v. Barr, 959 F.3d 1233, 1241 (9th Cir. 2020). However, in that sentence, Ninth Circuit was referencing their prior decision in Angov v. Lynch, 788 F.3d 893, 898 (9th Cir. 2015), where the Ninth Circuit concluded:

> Aliens "who have once passed through our gates, even illegally," are afforded the full panoply of procedural due process protections, and "may be expelled only after proceedings conforming to traditional standards of fairness." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212, 73 S. Ct. 625, 97 L. Ed. 956 (1953). But those, like Angov, who have never technically "entered" the United States have no such rights. *Id.* For Angov, procedural due process is simply "[w]hatever the procedure authorized by Congress" happens to be. *Id.* (internal quotation marks omitted); *see also Landon v. Plasencia*, 459 U.S. 21, 32, 103 S. Ct. 321, 74 L. Ed. 2d 21 (1982) ("[A]n alien seeking initial admission to the

---

[1] The undersigned additionally notes that Respondent provides relies on portions of Grigoryan and Valencia which are, in the undersigned's view, provided as background information. See Grigoryan v. Barr, 959 F.3d 1233, 1241 (9th Cir. 2020) ("Because Angov involved an asylum applicant who had not 'technically 'entered' the United States,' *we examined only* **whether the government violated the statutory rights that Congress afforded such applicants** . . ." (internal citations omitted)); Valencia v. Mukasey, 548 F.3d 1261, 1263 (9th Cir. 2008) ("*The government in its brief points out* that applicants for admission are unlike admitted aliens or aliens who are not subject to the 'entry fiction,' and therefore **applicants for admission have virtually no constitutional rights regarding their applications**.")(emphasis added).

6

United States requests a privilege and has no constitutional rights regarding his application . . . .”).

Angov v. Lynch, 788 F.3d 893, 898 (9th Cir. 2015)

Thus, Angov supports Petitioner's claim that his due process rights were violated because Petitioner's situation is factually distinct from Angov, who "never formally entered the United States. He presented himself at the San Ysidro port of entry without valid entry documents and sought asylum." Id. Whereas here, Petitioner here was provided conditional release by Respondents and has been living within the United States since September 2024 prior to his October 2025 detention.

Respondents additionally rely on Thuraissigiam, which is distinguishable for similar reasons. Respondents quote Thuraissigiam, as follows: "'aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border.'" ECF No. 7, pg. 2 (quoting Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139 (2020) (internal quotations and citations omitted)). Here, nothing in the facts indicate that Petitioner arrived at a port of entry. Thus, even if the Supreme Court in Thuraissigiam held[2] that noncitizens who arrive at a port of entry are not entitled to constitutional due process, such holding would not necessarily apply to Petitioner. Indeed, Mezei, which that portion of Thuraissigiam cites in support, addressed noncitizens arriving at ports of entry on ships, who were permitted to leave the vessel temporarily while the government determined if they were eligible for entry into the Untied States. See Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 215 (1953). The undersigned finds the facts in Mezei and Thuraissigiam distinguishable because Respondents do not claim that Petitioner arrived at a port of entry. See ECF No. 7.  Further, it is not clear that the Supreme Court's consideration of

[2] The undersigned finds that the cited portion of Thuraissigiam does not provide binding authority. The noncitizen in Thuraissigiam was not granted conditional released pursuant to Section 236. See Thuraissigiam, 591 U.S. at 139 ("Because he succeeded in making it 25 yards into U. S. territory before he was caught, he claims the right to be treated more favorably"). The Supreme Court's decision in Thuraissigiam did not require consideration of noncitizens released pursuant to Section 236, and therefore, the single reference to "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal," is dicta, not binding precedent.

the statutory scheme which allowed noncitizens arriving on ships to Ellis Island to leave the vessel pending immigration determination extends to noncitizens granted conditional parole under the current statutory scheme.[3]

As to Valencia, the undersigned finds this case is inapplicable here because it is explicitly referencing "constitutional rights regarding their applications," because there, Valencia was arguing that the "IJ was required as a matter of due process to advise her of a 'right' to apply for asylum." Valencia, 548 F.3d at 1262. Petitioner here is not seeking due process protection as to his application for admission, but rather, alleging that the revocation of his conditional release, without notice or opportunity to be heard, violated due process. Thus, the undersigned finds Valencia is not applicable to the facts at issue. Thus, the undersigned finds that the cases cited by Respondents are unpersuasive as the facts here are distinguishable.

"Key to a property interest determination is whether the person alleging a due process violation has an entitlement to the benefit at issue, conferred through statute, regulation, contract, or established practice." Armstrong v. Reynolds, 22 F.4th 1058, 1067 (9th Cir. 2022). The undersigned finds that Petitioner has a constitutionally protected entitlement in his continued release, as such interest is analogous to a parolee's protectable interest in remaining on parole, as established in Morrissey v. Brewer, 408 U.S. 471, 481 (1972). In Morrissey, the Supreme Court considered that "[t]he parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Morrissey v. Brewer, 408 U.S. at 482. The Supreme Court held that

> the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a "grievous loss" on the parolee and often on others. It is hardly useful any longer to try to deal with this problem in terms of whether the parolee's liberty is a "right" or a "privilege." By whatever name, the liberty is valuable and must be seen as within the protection of the

---

[3] The statutory immigration scheme has changed since Mezei was decided. See Rodriguez v. Robbins, 715 F.3d 1127, 1140 (9th Cir. 2013) ("[Mezei and Barrera-Echavarria v. Rison, 44 F.3d 1441 (9th Cir. 1995)] were decided under pre-IIRIRA law. Because the cases apply to the former category of 'excludable aliens,' it is not clear that the class of aliens to whom Mezei and Barrera-Echavarria applied is coextensive with the 1225(b) subclass in this case.") Thus, the Ninth Circuit acknowledged in Rodriguez v. Robbins, that it is unclear how, and whether, the holding in Mezei, applies to the new statutory scheme.

8

Fourteenth Amendment. Its termination calls for some orderly process, however informal.

Id. at 482.

Thus, even if Petitioner's release is considered a privilege, rather than a right, the weight of a liberty interest in being free from detention or incarceration and implicit promise afforded to Petitioner supports finding that Petitioner here has a protectable liberty interest in his continued release. Indeed, Petitioner here was provided conditions of release, which explicitly informed Petitioner of circumstances that could give rise to revocation of his parole.[4] See ECF No. 3-1, pgs. 12-13. Petitioner was informed he was "being released on your own recognizance provided you comply with the following conditions. . ." ECF No. 3-1, pg. 12.  This language sets a clear and reasonable expectation that Petitioner would be entitled to retain his liberty absent a material change in circumstances. Respondents do not allege that Petitioner violated those conditions. Thus, the undersigned finds that Petitioner's detention goes against United States Supreme Court precedent which recognizes that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued release. See Morrissey, 408 U.S. 471 at 482.

Recognizing DHS's policy change as to detention of noncitizens and that immigration enforcement presents differing government interests than non-immigration parole, the undersigned additionally considers the Supreme Court's analysis in Dep't of Homeland Sec. v. Regents of the Univ. of Cal.. There, the Supreme Court held that prior to DHS making changes to the Deferred Action for Childhood Arrivals, DHS must explicitly assess and articulate the reliance interests an existing program creates for noncitizens, even if the program is found to be illegal. See Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 591 U.S. 1, 30-33, 140 S. Ct.

---

[4] The undersigned notes that Petitioner's Notice to Appear and Order of Release on Recognizance indicate that Petitioner "refused to sign," the certificate of service and acknowledgement of conditions of release. See ECF no. 3-1, pgs. 8-12. However, such refusal did not result in Petitioner being denied conditional release and the undersigned finds that for over a year, both parties performed in accordance with the agreement, demonstrating mutual acceptance of the terms of the agreement. See Restatement (Second) of Contracts § 50 (1981) ("Acceptance by performance requires that at least part of what the offer requests be performed or tendered and includes acceptance by a performance which operates as a return promise).

1891, 1913-15 (2020). The Supreme Court held that when an agency like DHS changes course, it must "be cognizant that longstanding policies may have 'engendered serious reliance interests.'" Id. at 30. Thus, Supreme Court precedent supports finding that DHS policies can give rise to recognized reliance interests for noncitizens. The undersigned therefore finds that Petitioner's conditional release created a protectable reliance interest for Petitioner.

For these reasons, the undersigned rejects the government's contention that Petitioner is an "applicant for admission" subject to § 1225(b)(2) and finds that Petitioner is detained under 8 U.S.C. § 1226(a) and its implementing regulations because Petitioner's release was pursuant to Section 236. Further, the undersigned finds such release created a reasonable expectation of continued release under the terms of his agreed-upon release. Given this, the undersigned finds Petitioner has established his liberty interest in his continued release.

### B. Procedural Due Process

Having found a protected liberty interest, the Court examines what process is required prior to any deprivation of that protected liberty interest.

#### 1. Revocation of Release Pursuant to Section 236 of the INA

In accordance with finding Petitioner's prior conditional release was pursuant to Section 236 of the INA, the undersigned considers the process prescribed in Section 236 for revocation of such conditional release. 8 CFR § 236.1 (c)(9) provides that:

> (9) When an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody and detained. If detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled.

8 CFR § 236.1 (c)(9)

Thus, revocation of Petitioner's release is discretionary, but requires that "the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign)," make the discretionary decision to revoke Petitioner's release. As previously stated, Respondents provide no documents regarding Petitioner's October 30, 2025, detention nor do

10

Respondents allege that Petitioner's release was revoked pursuant to 8 CFR § 236.1 (c)(9). Thus, the undersigned finds that at minimum, Petitioner is entitled to the process prescribed in 8 CFR § 236.1 (c)(9) prior to revocation of Petitioner's conditional release.

2.    *Mathews* Factors

The undersigned further finds Petitioner is entitled to constitutional due process and therefore considers what process is necessary to ensure any deprivation of that protected liberty interest accords with the Constitution, weighing three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews v. Eldridge, 424 U.S. 319, 335 (1976). As set forth below, the undersigned finds Petitioner has established his due process rights were violated.

First, Petitioner has a substantial private interest in remaining free from detention. Petitioner has lived in the United States since September 2024. Despite that, Petitioner has now been detained since October 30, 2025, without being afforded a hearing. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. See Manzanarez v. Bondi, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly); see also Colina-Meira v. Lyons, No. 1:25-cv-1716 CSK P, 2025 LX 673205 (E.D. Cal. Dec. 31, 2025).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any bond or custody redetermination hearing. "[T]he risk of erroneous deprivation is high when, as here, parole is revoked without written notice or reason." Chavarria, 2025 WL 3533606, at *3; see also A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing."). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at

11

690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Respondents do not contend that Petitioner is or was a flight risk or a danger to the community. Indeed, Respondents concede that there exist "humanitarian realities that arguably weigh in favor of Singh's release." ECF No. 7, pg. 3. Thus, Court finds there is a serious likelihood Petitioner will be erroneously deprived of his liberty interest. Moreover, without any procedural safeguards to determine whether his re-detention was justifiable, the probative value of additional procedural safeguards is high. R.D.T.M., 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. See Garcia v. Andrews, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). The undersigned finds the government has an interest in enforcing immigration laws but Respondents' interest in detaining Petitioner without notice or a hearing here is low. See Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025). Detention hearings in immigration courts are routine and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. Even if Respondents believed they had a proper reason to detain Petitioner, such decision on their part would warrant written notice and a pre-detention hearing rather than automatic detention. See E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process"). In addition, the government's interest is even lower because Petitioner was previously released after immigration officials determined he was not a flight risk or danger to the community and there is no evidence that he has a criminal record.

On balance, the Court finds the Matthews factors weigh in favor of finding Petitioner is constitutionally entitled to notice and a bond hearing, and Petitioner should have been provided such notice and a hearing before he was re-detained. The Due Process Clause requires that, at a minimum, "that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted). In criminal

cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a pre-deprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). Respondents identify no reason why written notice was not provided or why a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025).

Accordingly, the undersigned finds Petitioner is entitled to relief as to his due process claims and will recommend granting Petitioner's petition for writ of habeas corpus.

### C.    Scope of Habeas Relief

The undersigned must next determine the appropriate scope of habeas relief. Given the undersigned finds that Petitioner has a constitutionally protected entitlement to his conditional release and Respondents violated Petitioner's due process rights when re-detaining Petitioner, the undersigned will recommend Petitioner be returned to the position he was prior to the violation of his due process rights. Specifically, the undersigned will recommend that Respondents be ordered to immediately release Petitioner under the same conditions he was released previously. The undersigned will additionally recommend that, because Petitioner is entitled to constitutionally afforded due process, Respondents be enjoined and restrained from re-arresting or re-detaining Petitioner absent a pre-deprivation/custody hearing, including seven (7) day notice and a hearing before a neutral fact-finder where Respondents show: (a) there are material changed circumstances which demonstrate that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present. In the alternative, the undersigned will recommend that because Respondents did not follow the procedure to revoke Petitioner's release, as prescribed in 8 CFR § 236.1 (c)(9), Respondents be enjoined and restrained from re-arresting

13

or re-detaining Petitioner absent compliance with 8 CFR § 236.1 (c)(9).

**III. CONCLUSION**

Based on the foregoing, the undersigned recommends:

1.      It is RECOMMENDED that Petitioner's petition for writ of habeas corpus, ECF No. 1, be GRANTED as Petitioner's detention violates due process;

2.      It is RECOMMENDED that Petitioner Amritpal S. Atwal be RELEASED IMMEDIATELY from Respondents' custody upon the same conditions as his prior release. Respondents shall not impose any additional restriction on him, such as electronic monitoring, unless that is determined to be necessary at a future pre-deprivation/custody hearing;

3.      It is RECOMMENDED that Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent:

(a) compliance with constitutional protections, including seven (7) day notice and a hearing before a neutral fact-finder where Respondents show: (a) there are material changed circumstances which demonstrate that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present; or, in the alternative,

(b) compliance with 8 CFR § 236.1 (c)(9).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

14

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). Thus, within 7 days after being served with these findings and recommendations, any party may file written objections with the Court. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 24, 2026

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE